# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

**FILED**

Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By Carrie Ramirez at 1:52 pm, May 12, 2009

In the matter of:          )

         )         Chapter 7 Case

PATRICIA LYNN ALLEN      )

         )         Number <u>07-42066</u>

           *Debtor*      )

<u>**MEMORANDUM AND ORDER**</u>
<u>**ON MOTION OF THE UNITED STATES TRUSTEE**</u>
<u>**TO DISMISS PURSUANT TO § 707(b)**</u>

<u>FINDINGS OF FACT</u>

Debtor's Chapter 7 was filed on December 18, 2007. On March 17, 2008, the United States Trustee filed a Motion to Dismiss. The United States Trustee argues that Debtor's Chapter 7 case constitutes an abuse of Chapter 7, contending that (1) an unrebutted presumption of abuse arises under § 707(b)(2)(A)(I) or (2) abuse has been shown under § 707(b)(3)(B) and its totality of circumstances test. Following discovery, the parties entered into a joint stipulation of facts which is incorporated herein *verbatim*.

> 1. The debtor filed a voluntary chapter 7 bankruptcy petition on December 18, 2007 (the "petition date"). Along with her petition, the debtor filed, *inter alia*, bankruptcy schedules, a statement of financial affairs, a statement of intention, and a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (the "Means Test Form"). *See* **Exhibit A** (petition and related filings).

> 2. The debts at issue in the debtor's case are primarily consumer debts.

℗AO 72A
(Rev. 8/82)

3. For most of 2007, the debtor's youngest daughter (date of birth: 6/10/88) lived with the debtor in her household. However, the debtor's daughter moved away from the debtor's home at the beginning of December 2007. As a result, the debtor had only one person (herself) living in her household on the petition date. The debtor claimed her youngest daughter as a dependent on her 2007 tax return. *See* **Exhibit B** (debtor's 2007 income tax return).

4. On January 15, 2008, the U.S. Trustee's office sent an email to counsel for the debtor, with a copy to the Chapter 7 Trustee, detailing the questions raised by the U.S. Trustee's initial review of the documents filed by the debtor and requesting further documents. The email requested that the Chapter 7 Trustee continue the meeting of creditors to allow the debtor a reasonable time to produce the documents requested by the U.S. Trustee. *See* United States Trustee email of January 15, 2008 attached hereto as **Exhibit C**.

5. On January 17, 2008, the Chapter 7 Trustee convened the meeting of creditors. The debtor appeared and testified. Pursuant to the U.S. Trustee's request, the Chapter 7 Trustee adjourned the meeting of creditors and announced that the meeting would reconvene on February 7, 2008 at 3:00 p.m. The debtor did not object to the adjournment.

6. On February 4, 2008, the debtor responded to the U.S. Trustee's email inquiry of January 15, 2008. Attached to the debtor's email were various documents offered to satisfy the U.S. Trustee's request for documentation. *See* Debtor's email of February 4, 2008 attached hereto as **Exhibit D**.

7. After completing its review, the U.S. Trustee's office sent an email to debtor's counsel (with a copy to the Chapter 7 Trustee) on February 6, 2008 detailing the results of the U.S. Trustee's analysis regarding the presumption of abuse, notifying the debtor that her appearance at the continued meeting of creditors would not be required, and requesting that the Chapter 7 Trustee

AO 72A
(Rev. 8/82)

conclude the meeting of creditors when it reconvenes. *See* United States Trustee email of February 6, 2008 attached hereto as **Exhibit E**.

8. On February 7, 2008, the Chapter 7 Trustee reconvened and concluded the meeting of creditors without further appearance or testimony from the debtor.

9. The U.S. Trustee filed a Statement of Presumed Abuse on February 19, 2008. February 17, 2008 was a Sunday. February 18, 2008 was a federal holiday, Washington's Birthday.

10. On March 17, 2008, the U.S. Trustee filed a motion to dismiss, asserting dismissal claims based on the presumption of abuse under § 707(b)(2) and based on the totality of the debtor's financial circumstances under § 707(b)(3).

11. On the petition date, the debtor owned a home at 1173 Highway 21, Springfield, GA that she intended to surrender to the secured creditor. Prior to the petition date, the debtor failed to make the monthly mortgage payments due October 1, 2007; November 1, 2007; and December 1, 2007. The debtor made no postpetition mortgage payments and promptly surrendered possession of her home to the secured creditor.

12. On the petition date, the debtor owned a 2006 Toyota Solara that she intended to surrender to the secured creditor. The debtor made no postpetition payments to the secured creditor and promptly surrendered possession of the vehicle to the secured creditor.

13. On the petition date, the debtor owned a 2001 Volkswagen Jetta in fair condition with no liens against it. After the petition date, the debtor gave possession of this vehicle to her youngest daughter. The debtor received no money in return for the vehicle, and the debtor continues to pay $79.00 per month to insure this vehicle for her daughter to drive.

14. On January 18, 2008, the debtor's mother purchased a 2008 Dodge Caliber for the debtor to drive. The debtor's mother is the title owner of the vehicle, but the debtor agreed to make all of the monthly payments on the vehicle. The purchase price of $18,688.96 was financed, and the finance contract requires monthly payments of $359.00 over 72 months. Debtor's mother has agreed to transfer title of the vehicle to the debtor after the last payment is made.

15. Attached hereto as **Exhibit F** is a spreadsheet showing both the debtor's and the U.S. Trustee's means test analysis. The spreadsheet illustrates the line entries that the parties assert to be correct on the means test form. The parties agree that the numbers appearing on the spreadsheet are accurate and that there are no facts in dispute as to these amounts. The legal issues in dispute as to the means test line entries are described in detail in the U.S. Trustee's motion to dismiss and the debtor's response thereto.

16. Attached hereto as **Exhibit G** are stipulated Schedules I and J showing the debtor's income and expenses as of the petition date. The parties agree that the numbers appearing on these schedules are accurate.

17. Attached hereto as **Exhibit H** are stipulated Schedules I and J showing the debtor's current income and expenses. The parties agree that the numbers appearing on these schedules are accurate through January 27, 2009. The debtor is moving to a new residence in February 2009. Her income will remain the same, but her utility expenses may change.

18. The debtor is currently 41 years old and in good health. She is employed as a registered nurse with Lifelink Foundation earning an annual base salary of $56,000.00 for 40 hours per week (80 hours per bi-weekly pay period). *See* **Exhibit I** (Lifelink payment advices dated 10/17/08 - 12/12/08). Any overtime earned by the debtor would be in addition to the $56,000.00 base salary. The debtor continues to live alone and has no dependents living in her

AO 72A
(Rev. 8/82)

household other than herself.

19. The U.S. Trustee issued three sets of interrogatories to the debtor. The debtor's answers to each set of interrogatories are attached hereto as **Exhibit J**, **Exhibit K**, and **Exhibit L**.

In her Means Test calculation, Debtor claimed four deductions that the United States Trustee disputes and this Court will address: (1) a $699.68 deduction on Line 42A and a $265.00 deduction on Line 42B for future secured debt payments on a first lien and second lien respectively on her house and a $438.96 deduction on Line 42C for future secured debt payments on the Toyota Solara; and (2) a $332.00 vehicle ownership deduction under the Internal Revenue Service standards on Line 24 for the 2001 Volkswagen Jetta.[1]

## CONCLUSIONS OF LAW

### I. Timeliness of the Motion to Dismiss

In a threshold issue, Debtor argues that the United States Trustee's motion to dismiss was not timely. 11 U.S.C. § 704(b) provides in pertinent part:

> (b)(1)(A) the United States trustee . . . shall review all materials filed by the debtor and, *not later than 10 days after the date of the first meeting of creditors*, filed with the court a statement as to whether the debtor's case would be presumed to be an abuse under 707(b); and

---

[1] In his post-trial brief, the United States Trustee also disputes Debtor's deduction of $32.04 for the vehicle ownership deduction on Line 23 for the Toyota Solara. However, the United States Trustee concedes that this deduction is not dispositive in this case, thus this Court will not address this issue. Brief, Dckt.No. 69, pg. 13

AO 72A
(Rev. 8/82)

. . .

> (2) The United States trustee . . . shall, not later than *30 days after the date of filing a statement under paragraph (1)*, either file a motion to dismiss or convert under section 707(b) or file a statement setting forth the reasons the United States trustee . . . does not consider such a motion to be appropriate.

Debtor argues § 707(b)(1) requires the United States Trustee to file his statement of abuse within 10 days of the beginning, or "first" meeting of creditors. Conversely, the United States Trustee argues the 10-day period runs from the "conclusion" of the first meeting of creditors. For the reasons stated in the Honorable Susan D. Barrett's decision In re Molitor, 395 B.R. 197, 201-04 (Bankr.S.D.Ga. 2008), I agree with the United States Trustee. Therefore, I find that the Trustee's motion to dismiss under § 707(b) was timely.

## II. Presumption of Abuse under § 707(b)(2)

Section 707(b)(2)(A) states that this Court shall presume that a debtor's case is an abuse of Chapter 7 if the debtor's current monthly income, less the amounts deductible under § 707(b)(2)(A)(ii)(iii), and (iv), over a 60-month period, equals or exceeds $182.50 ($10,950/60). Debtor's Form B22A shows that her monthly income is $4,620.93 and her monthly deductions total $4,966.71. That negative number falls well below the $10,950 threshold. However, if the deductions that the United States trustee disputes are disallowed, the presumption of abuse will arise.

## A. Future Payments on Secured Claims - Line 42

The United States Trustee's calculations show disposable income of $988.09. Because Debtor was obligated on a mortgage at the time of the filing which she intended to surrender, the United States Trustee allowed her $696.00 on Line 20(b). Based on In re James, Ch.7, Case. No. 07-40455 (Bankr.S.D.Ga. Sept. 5, 2008)(Davis, J.), I now rule that she is entitled to the deductions on Line 42(a) and (b), thus reducing her disposable income by those figures. However, the United States Trustee's allowance of $696.00 then needs to be eliminated. In addition, based on the precedent in James, Debtor is entitled to the deduction on Line 42(c) for the Toyota Solara she intended to surrender but was contractually obligated to make payments on at the time of the petition. The result of all these calculations using the United States Trustee's numbers is that her disposable income is reduced to $280.45 per month ($988.09 [United States Trustee's Monthly Disposable Income] - $699.68 [First Mortgage] - $265.00 [Second Mortgage] - $438.96 [Automobile Payment] + $696.00 [Deduction Allowed by the United States Trustee]).  Since $280.45 is still above the $182.50 threshold, unless some of Debtor's other deductions are allowed, she remains above the presumption of abuse threshold.

## B. Deductions under IRS Standards

Besides allowing a deduction for future payments on secured claims, 11 U.S.C. § 707(b)(2) also allows a monthly expense deduction under the IRS standards. Section 707(b)(2)(A)(ii)(I) defines "monthly expenses" as follows:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.

The National and Local Standards referenced in the statute are found in the IRS's Financial Analysis Handbook, which is, in turn, contained in the IRS's Internal Revenue Manual ("IRM").[2] Revenue agents use the IRM to assess the financial condition of delinquent taxpayers in order to determine how much they can afford to pay back to the government. The IRM specifies three types of expenses: National Standards, Local Standards, and Other Expenses. *See* IRM § 5.15.1.7.

The IRS National Standards include items such as food, clothing, household supplies, personal care, and miscellaneous expenses. For these items, a debtor's allowable expenses are uniform, regardless of where the debtor lives. The IRM's Local Standards set out two categories of expenses: transportation and housing/utilities, and these amounts vary from place to place. A third category, Other Necessary Expenses, includes such items as monthly payments on student loan debt, taxes, mandatory payroll deductions, health care, and

---

[2] The IRM, including the Financial Analysis Handbook, can be found on the IRS website, at http://www.irs.gov/irm.

telecommunication services. For these, a debtor is allowed to deduct the actual amount that the debtor spends on a monthly basis, without any specified limitation on such expenses.

On the stipulated means test chart, Debtor claims a vehicle ownership deduction for a 2001 Volkswagen Jetta equal to the full $332.00 available under the IRS standard for a second vehicle. The United States Trustee on the other hand allowed no ownership deduction on Line 24, but did increase the Operations Expense deduction on Line 22 by $200.00 for an old car from $260.00 to $460.00.

The issue here is whether Debtor can deduct a vehicle ownership expense pursuant to § 707(b)(2)(A)(ii)(I), notwithstanding that the debtor owns the vehicle free and clear of any liens or encumbrances. The IRS Local Standards apply to transportation costs, which are divided into two components: a nationwide allowance for ownership costs and an allowance to cover the cost of operating one or two motor vehicles or the cost of public transportation. *See* IRM § 5.15.1.

The United States Trustee contends that Debtor "may claim the ownership/lease expense deduction only if the vehicle in question is either [actually] (1) leased, or (2) owned but subject to an obligation to a secured creditor." U.S.Trustee's Post Trial Brief, Dckt.No. 69, pg. 13-14 (March 11, 2009). Debtor, on the other hand, argues that "applicable" expenses are those that apply to the debtors by virtue of their geographic region

AO 72A
(Rev. 8/82)

and number of cars, regardless of whether the debtor has an actual loan or lease payment.

There is a split among courts over this issue, and "[m]ost courts on either side of the split base their respective positions on a plain meaning interpretation of § 707(b)(2)(A)(ii). The meaning of the phrase, 'the debtor's applicable monthly expense amounts specified under the Local Standards,' is the point of division between the courts . . . " In re Ransom, 380 B.R. 799, 803 (9th Cir.B.A.P. 2007)(internal citations omitted).

One court of appeals and two bankruptcy appellate panels adopt the so-called "plain language approach." This approach holds that a debtor who owns his car outright may take the deduction because

> 'applicable' refers to the selection of an expense amount corresponding to the appropriate geographic region and number of vehicles owned by the debtor. In other words, under the plain language approach, the Local Standard vehicle ownership deduction 'applies' to the debtor by virtue of his geographic region and number of cars, regardless of whether that deduction is an actual expense.
>
> In re Ross-Tousey, 549 F.3d 1148, 1157-58 (7th Cir. 2008)(internal citations omitted); see also In re Kimbro, 389 B.R. 518, 532 (6th Cir. B.A.P. 2008); In re Pearson, 390 B.R. 706, 714 (10th Cir.B.A.P. 2008) order vacated slip op., 2009 WL 205408 (10th Cir. Jan. 22, 2009).

Two other bankruptcy appellate panels have adopted an opposite "IRM

approach" and "read 'applicable' to mean that the debtor can deduct a vehicle ownership expense under the Local Standards *only if* he or she has such an expense in the first place." In re Ransom, 380 B.R. at 805; *see also* In re Wilson, 383 B.R. 729, 734 (8th Cir.B.A.P. 2008).  In describing this approach, the Seventh Circuit that the courts using this approach "use the methodology of the IRM as an interpretive guide for the means test." In other words, "[d]ecisions favoring the IRM view generally reason that we should look not only to the Local Standards themselves (which are simply dollar amounts) in conducting a debtor's means test, but also to the manner in which the IRM uses the Local Standards in the revenue collection process."  In re Ross-Tousey, 549 F.3d at 1158. "Under the I.R.S. methodology, if a taxpayer has no car payment, the taxpayer is entitled only to the transportation operation deduction, not the ownership deduction."  Id. at 1159.

For the reasons stated in In re Ross-Tousey, 549 F.3d 1148 (7th Cir. 2008), I adopt the "plain meaning approach" and hold that even though Debtor owns her car outright, she may make the deduction under Line 24 of the Means Test Form. Furthermore, because I will allow the $332.00 deduction on Line 24, she can only receive $260.00 on the United States Trustee's calculations for Transportation Operations Expenses on Line 22 and would not receive the additional $200.00 allowance proposed by the United State Trustee. Her disposable income would thus be reduced by $132.00. ($332.00 [Vehicle Ownership Deduction] - $200.00 [Decrease in Operations Expense Deduction]).

11

Thus starting with the tentative $280.45 per month disposable income derived from my rulings *supra* at page 7, this additional deduction reduces Debtor's disposable income to $148.45 per month.($988.09 [United States Trustee's Monthly Disposable Income] - $699.68 [First Mortgage] - $265.00 [Second Mortgage] - $438.96 [Secured Payments on Toyota Solara] + $696.00 [United States Trustee's Allowed Deduction] - $332.00 [Vehicle Ownership Deduction] + $200 [Decrease in Operations Expense Deduction]). Since that number is below the $182.50 threshold, the presumption of abuse does not arise.

### III. <u>Totality of Circumstances of Debtor's financial situation demonstrates "abuse" under § 707(b)(3)(B)</u>

The United States Trustee has alternatively asked this Court to dismiss Debtor's Chapter 7 under 11 U.S.C. § 707(b)(3)(B), arguing that the granting of relief would be an abuse of the provisions of Chapter 7 given the totality of circumstances of Debtor's financial situation.[3] That section states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–

---

[3] At the hearing, Debtor asked this Court to reject its prior reasoning in <u>Cribbs</u> and <u>James</u> and find that if Debtor passes the means test under § 707(b)(2) then this Court should only dismiss a case under § 707(b)(3) if there is evidence of bad faith. However, this ignores that BAPCPA explicitly bifurcated § 707(b)(3) so that a court may find abuse under this section if debtor filed the petition in bad faith OR the totality of the circumstances of the debtor's financial situation demonstrate abuse.

> (B) the totality of circumstances . . . of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3)(B).

Since the presumption did not arise, the United States Trustee bears the burden of proving that a totality of circumstances of the debtor's financial situation demonstrates "abuse." In re Cribbs, 387 B.R. 324, 332 (Bankr.S.D.Ga. 2008)(Davis, J.). "[I]n order to prove a totality of circumstances of a debtor's financial condition demonstrates abuse, the United States Trustee must show more than a debtor's ability to fund a Chapter 13 plan." In re James, Ch.7, Case. No. 07-40455, pg. 17 (Bankr.S.D.Ga. Sept. 5, 2008)(Davis, J.).

"'[T]he sheer mathematical ability to fund a chapter 13 plan can, and properly should, be considered and weighed as one, but only one, factor within a totality of circumstances analysis. To artificially limit this Court's examination of the debtor's financial condition to one factor 'is at odds with the totality of circumstances inquiry mandated by Congress.'" Id., pg. 19(quoting In re Beckerman, 381 B.R. 841, 845 (Bankr.E.D.Mich. 2008)). Therefore even though the primary factor is whether a debtor has the ability to repay a meaningful portion of his debts from future income, the United States Trustee must prove more.  Some of the factors for "proving more" include:

> (1) Whether the bankruptcy filing was precipitated by an unforseen or sudden calamity, such as an illness or unemployment;

AO 72A
(Rev. 8/82)

(2) Whether the debtor is eligible for chapter 13 relief;

3) Whether the debtor has made any efforts to repay his debts or negotiate with creditors; whether there are non-bankruptcy remedies available to the debtor; or whether the debtor can obtain relief through private negotiations;

4) Whether the debtors could provide a "meaningful" distribution in a chapter 13 case;

(5) Whether the debtor's expenses could be reduced significantly without depriving them and their dependents of necessities, including whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(6) the period of time over which the debts were incurred; and

(7) whether the debtor has a stable source of future income.

<u>Id</u>.

I hold that the United States Trustee has satisfied its burden of showing the totality of Debtor's financial situation demonstrates "abuse." To determine whether Debtor can provide a "meaningful" distribution in a hypothetical Chapter 13, courts consider the debtor's schedules, statements, and any other facts that are necessary for this analysis. There is no bright-line rule establishing what is "meaningful." Rather a court should consider both the percentage of unsecured debt a debtor is capable of paying as well as the dollar amount payable to any particular creditor or class. <u>Id.</u> at pg. 20. In trying to create an objective standard to help in this analysis, I found in <u>James</u> that the $182.50 threshold fixed in §

707(b)(2)(A) is "a helpful tool for determining whether a case should be dismissed for abuse under § 707(b)(3)(B)" in that "[i]t assists courts in analyzing what is "meaningful based on Debtors' projected future income from Schedules I and J." Id. at pg. 21.

In this case, I find that Debtor can make a meaningful distribution. As of the date of the hearing, the schedules showed disposable income of $669.53 per month. However, based on additional stipulations at trial,[4] Debtor's total monthly expenses should be increased by $65.00 thus making Debtor's disposable income $604.53 or $36,271.80 over a 5 year plan, which is more than three times the $182.50 threshold. Stipulation, Exhibit H.

Debtor currently has no secured debt because she has surrendered her home and has surrendered the 2006 Toyota Solara. However, Debtor does have $15,358.14 in priority unsecured debt and $40,834.77 in nonpriority unsecured debt. See Stipulation, Dckt.No. 66, Exhibit A (petition), Schedule D, E & F. After subtracting the $15,358.14 in priority unsecured debt from the disposable income, Debtor would have approximately $20,913.66 in disposable income to pay the $40,834.77 in nonpriority unsecured debt which would yield approximately a 51.2% dividend which is more than double the alternative 25% threshold.

---

[4] U.S. Trustee's post-trial brief stated "the debtor's electricity and heating fuel expense is now $200.00 per month rather than $90, and the debtor's telephone and internet/cable expense are now consolidated in a single package that costs $115.00 per month rather than $160.00. These adjustments increase the debtor's total monthly expenses by $65.00." Post-Trial Brief, Dckt.No. 69, pg. 19 n. 8.

AO 72A
(Rev. 8/82)

Having established the primary factor of "meaningful ability," the United States Trustee must still show more, and that showing has been made. First, Debtor is eligible for a Chapter 13 and has a stable source of future income. Debtor is gainfully employed as a registered nurse earning an annual gross salary of $56,000.00, which is much higher than the median gross income of $38,086.00 for a one-person household in the state of Georgia on the petition date. In fact, Debtor has moved twice during the pendency of this case and has successfully changed employment both times. Also, Debtor's unsecured debt easily falls within the Chapter 13 debt thresholds of 11 U.S.C. §109(e).

Second, there is no evidence that Debtor filed for bankruptcy because of an unforseen calamity such as sudden illness, disability, or unemployment. Instead, at the time of the petition, Debtor was employed as a registered nurse at Beaufort Memorial Hospital for over three years, making approximately $3,040 per month. Stipulation, Exhibit A (petition), Schedule I.

Third, Debtor has the ability to reduce her monthly expenses and fund a higher yielding Chapter 13 plan. Currently, Debtor is paying $225.00 in support to her adult children who are not living at home. Id., Exhibit H, Schedule J, Line 15. Though supporting college-age children is admirable when parents have the means to do so, this Court reaffirms its long-held precedent in following The Honorable W. Homer Drake, Jr., and numerous other colleagues in finding "that supporting adult children at the expense of unsecured

AO 72A
(Rev. 8/82)

creditors is not permissible." In re Walker, 383 B.R. 830, 838-39 (Bankr.N.D.Ga. 2008)(and cases cited therein). If this expense is eliminated, Debtor would have $829.53 per month in disposable income ($604.53 [Debtor's disposable income] + $225.00 [Support of her adult children], which over a five-year Chapter 13 plan would yield approximately an 84% dividend to unsecured creditors ($49,771.80 [$829.53 disposable income multiplied by 60 months] - $15,358.00 [priority unsecured debt] divided by $40,834.77 [non-priority unsecured debt]).

Debtor is also paying $79.00 per month for insurance on the 2001 Jetta her youngest daughter drives, a vehicle which Debtor gave to her youngest daughter after the petition date, receiving no money in return. After that gift Debtor incurred a $359.00 per month expense on a new vehicle. *See* Id., Line 13a; Exhibit K. If the United States Trustee succeeded in its argument that these deductions should not be allowed, Debtor could conceivably have $1,360.87 per month in disposable income ($604.53 + $225 + $79 + $359 + 93.34), which over a 5-year Chapter 13 plan would yield a 100% dividend to unsecured creditors ($81,652.20 minus $15,358.14 divided by $40,834.77).

Because Debtor can fund a meaningful repayment under Chapter 13 and because multiple factors have been proven in accordance with my earlier rulings on this point, I find the United States Trustee has prevailed on the totality of circumstances showing for dismissal.

## O R D E R

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS

THE ORDER OF THIS COURT that the case is dismissed unless Debtor converts her

Chapter 7 to a voluntary Chapter 13 on or before May 22, 2009.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This ___8th___ day of May, 2009.

AO 72A
(Rev. 8/82)